Sir George Jessel and Justice Cotton in the court below upon the expression "subject to the title being approved by our solicitors." Our court of appeals in Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, refers to a title to real estate, as does also the later case of Flanagan v. Fox, 144 N. Y. 705, 39 N. E. 857. It is upon Vought v. Williams that these plaintiffs rely, but Flanagan v. Fox, which the court of appeals affirmed on the opinion of Mr. Justice Bischoff, refers to the case of Vought v. Williams, and declares that the language upon which these plaintiffs rely was unnecessary to the decision of the case, and therefore not an 'authority. As this may be open to question, we will regard this language as making a precedent, and not as mere argument. Even with this concession, that opinion makes it clear that, where a contract provides that a title should be first class, and to be passed upon by a lawyer or conveyancer to be designated by the plaintiff, a refusal of counsel to pass the title as good must be unreasonable, and that a failure to obtain the approval of counsel would not defeat a recovery, if in fact the title was good beyond all dispute; so that even this decision—the most favorable to the plaintiffs—interjects a new and different element into the contract from that which the law implies, namely, it might be incumbent upon the vendor to show that the vendees' lawyer unreasonably refused to pass a title which was good beyond all dispute. It follows that plaintiffs' bid was conditional, and therefore the temporary injunction must fall. This conclusion is reached without reference to the extraneous facts and circumstances, such as the city's ability to lawfully incur further obligation, upon which discussion was rife in the press and in the courts shortly before the plaintiffs submitted their proposal. If it were necessary, in the face of the plain unmistakable words of this bid, to venture beyond them into the region of construction and interpretation, such extraneous facts would only serve to confirm the views expressed.

---

(31 App. Div. 464.)

### DICKINSON v. VANCE.

(Supreme Court, Appellate Division, Fourth Department.   June 18, 1898.)

CONTRACTS—MERGER.

> Plaintiff contracted to convey land to defendant and her husband in consideration, among other things, of their assigning to him a bond and mortgage, on which they covenanted a certain sum was unpaid. *Held*, that acceptance by plaintiff of an assignment of the bond and mortgage by the husband, to whom they belonged, after learning of an agreement of the husband with the mortgagor to pay certain taxes on the mortgaged lands, and a covenant that, if the mortgagor paid them by reason of the husband's failure to do so, they might be treated as payment on the bond and mortgage, was not a merger of the preliminary agreement, so as to free defendant from liability on the covenant as to the amount unpaid by the mortgagor, where the taxes were not paid by her or her husband.

Appeal from trial term.

Action by Charles E. Dickinson against Mary A. Vance. Judgment for plaintiff. Defendant appeals. Affirmed.

The following is the opinion of the court below (SPRING, J.):

On the 26th day of November, 1892, the plaintiff, as party of the first part, entered into a written agreement with Arthur Vance, now deceased, and his wife, the defendant, whereby said Dickinson agreed to convey to the parties of the second part certain lands owned by him in the city of Buffalo, and to transfer to them certain certificates of stock in the Rochester Candy Works, in consideration whereof the parties of the second part agreed to convey to the plaintiff certain premises on Lake avenue, in Rochester, and also to assign and transfer to him a certain bond and mortgage held by said Arthur Vance, on which it was covenanted there was unpaid the full face value of $14,000, and $700 interest thereon, subject to a deduction of $6,200, erroneously stated in said agreement as $5,200. This agreement had been drawn, and the negotiations preliminary to its preparation had been carried on, upon the assumption that the title to the Vance property was in Arthur Vance, when, in truth, the title to the Lake avenue property was in this defendant and her husband; and, upon the ascertainment of this fact, Mrs. Vance's name was inserted as one of the parties of the second part, and the agreement was duly executed by her co-jointly with her husband. On the 17th day of December following, the agreement between the parties was carried out; that is, the plaintiff conveyed to the defendant the real estate situate in Buffalo, and transferred to her husband the certificates of stock in the candy company; and Mr. and Mrs. Vance executed to Dickinson a conveyance of the Lake avenue property, and her husband assigned to him the Schaeffer mortgage, of $14,000, with a covenant as to the amount unpaid thereon tallying with the like stipulation and covenant in the agreement. It seems that this Schaeffer mortgage had been taken by Vance as part of the purchase price of land conveyed by Vance to the Schaeffers; that, when the lands were conveyed, there were unpaid tax liens thereon arising from the construction of a sewer, pursuant to the authority of the municipal authorities of the city of Rochester; and that, simultaneously with the execution of the conveyance to the Schaeffers and the execution of the mortgage to him, Vance had executed an independent agreement, whereby he had agreed to pay these taxes, and further covenanted that, in case his grantees paid the same by reason of his failure so to do, they might treat the same as payment on said bond and mortgage. At the time of the delivery of the papers conformably to the Dickinson-Vance agreement, these assessments had not been paid. Dickinson, at the time of the making of the preliminary agreement, knew nothing of the unpaid taxes, or of the agreement Arthur Vance had made with the Schaeffers; and that agreement had never been recorded. Between that time and the delivery of the conveyance and assignment of the bond and mortgage to him, he had been apprised of the true situation of affairs. Later on, the plaintiff commenced a suit for the foreclosure of the Schaeffer mortgage, and an issue was raised arising out of the payment of these taxes by the Schaeffers. It seems that the description and designation of the street whereon the sewer was laid, and of the ordinance number, were improperly stated in the agreement Arthur Vance had made, and the defendants in that suit asked and obtained, apparently without opposition, a reformation of the agreement as to these errors, and also obtained a judgment dismissing the complaint on the ground of the failure of Arthur Vance to pay these assessments, and they were subsequently paid by the plaintiff. Arthur Vance died, leaving a will, in which his wife, the defendant, was named as executrix; and the plaintiff now sues her as one of the parties to the agreement preceding the execution and delivery of the deeds, etc., to recover the amount paid by him for these taxes.

The facts are substantially undisputed. While Arthur Vance owned the Schaeffer bond and mortgage, there was no separation in the Dickinson agreement of his interests from those of the defendant. She owned the land on Lake avenue jointly with him, but by the agreement two things were undertaken by the Vances: First, to convey an indefeasible title to Dickinson of this Lake avenue property; second, to assign to him the Schaeffer bond and mortgage. Dickinson did not look into the relations subsisting between the husband and wife as to the title of the real property, but accepted their joint agreement to vest the title in him. Arthur Vance covenanted to do

this as well as his wife, and for a breach of this agreement each would be liable to Dickinson. The same is true as to the Schaeffer mortgage. The Vances jointly agreed and covenanted to assign to him this mortgage, and, more than that, they covenanted that there was unpaid a specific sum, subject to a definite reduction. Not only Arthur Vance so covenanted or stipulated, but the defendant did so as well; and they were both liable for the fulfillment of the agreement, and one as well as the other could be held in damages for the breach. There was ample consideration moving to the defendant, thus distinguishing the case from Mygatt v. Coe, 152 N. Y. 457, 46 N. E. 949, and kindred cases. She was part owner of the Lake avenue property, and conveyed it, and she accepted the conveyance of the Buffalo property. So, she was not a party as a matter of form, but she had a property interest, and was vested with another valuable interest as the fruits of the agreement she had made. It was not incumbent on Dickinson to separate the burdens assumed by these parties to the agreement. They made no distinction in their agreement. Together they voluntarily undertook to perform, and if the title to part of the property was in one, and part in another, they must adjust their rights among themselves.

It is urged that the acceptance of the assignment of the bond and mortgage by Dickinson, with knowledge of the agreement Arthur Vance had made with the Schaeffers, amounted to a merger of the preliminary executory agreement. The rule is certainly not invariable that the executed agreement merges in it all the covenants of the preceding executory contract. It depends upon the intention of the parties, and, if there is nothing to show it was the design to surrender or extinguish the preceding covenants, the presumption is they will remain in force. Smith v. Holbrook, 82 N. Y. 562; Morris v. Whitcher, 20 N. Y. 41; Disbrow v. Harris, 122 N. Y. 362, 25 N. E. 356; Witbeck v. Waine, 16 N. Y. 532; Applebee v. Duke, 13 N. Y. Supp. 929.

The plaintiff accepted an assignment of the bond and mortgage, in which Vance covenanted there was unpaid the sum of $14,000 and interest, as recited in the executory agreement. To vest title in him of this bond and mortgage, the assignment from Arthur Vance was all that was necessary. There was already in force a covenant or stipulation assuring to the plaintiff the unqualified title to this bond and mortgage, with no other reduction than that stipulated. The assignment did not contain any statement as to the reduction of $6,200; yet it was not nullified by that instrument or merged in it. So, any independent covenant not in hostility to the executed contract is not invalidated by the delivery of the final papers in the consummation of the preceding agreement, unless it was apparent that such was the design of the parties. There is no pretense here that the warranty as to the $6,200 was destroyed by this assignment, and there is no circumstance to show that the parties intended the abrogation of the warranty as to the amount generally unpaid on the mortgage. It would not occur to Dickinson to have the defendant join with her husband in the assignment of the bond and mortgage. Title could be transferred without this. The delivery of these papers was essential to the fulfillment of the agreement, but nothing appears indicating that it was the intention of the plaintiff to surrender any of his rights under the agreement. He may have expected Arthur Vance would fulfill his agreement with the Schaeffers, and pay the tax liens; but this expectation would be in no wise incompatible with an intention to retain all the rights, necessary to protect himself, which were accorded to him by the contract he had entered into with the Vances. The plaintiff is entitled to judgment for the sums paid by him for these tax liens.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Henry M. Hill, for appellant.
David Millar, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of SPRING, J., delivered at trial term.